Octavio Cardona-Loya II, Esq. SBN 255309
Law Offices of Eric F. Fagan
2300 Boswell Rd. Suite 211
Chula Vista, CA  91914
vito@efaganlaw.com
Phone: 619-656-6656; Fax: 775-898-5471
Attorney for Plaintiff ELIZABETH A. HURREY-MAYER

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH A. HURREY-MAYER, an individual,<br><br>            Plaintiff,<br><br>v.<br><br>WELLS FARGO HOME MORTGAGE, INC. d.b.a. AMERICA'S SERVICING COMPANY, a corporation;  and DOES 1 through 10 inclusive,<br><br>            Defendants. | Case No.: 09 CV 1470 DMS (NLS)<br><br>[No Oral Argument Unless Requested by the Court]<br><br>**Plaintiff's Response in Opposition to Defendant Wells Fargo Home Mortgage, Inc.'s Motion to Dismiss**<br><br>Date: September 11, 2009<br>Time: 1:30 p.m.<br>Courtroom: 10<br><br>The Hon. Dana M. Sabraw |

## I. INTRODUCTION

Plaintiff Elizabeth Hurrey-Mayer filed suit to address the unlawful debt collection practices and foreclosure activity by WELLS FARGO HOME MORTGAGE, INC. d.b.a. AMERICA'S SERVICING COMPANY ("ASC").  The parties amicably resolved the foreclosure issue;  Ms. Mayer promptly dismissed the associated breach of contract and declaratory relief claims.  The remaining claims in the Complaint are: (1) Violation of the Rosenthal Act, (2) Invasion of Privacy, (3) Violation of the Telephone Consumer Protection Act (TCPA), and (4) Unlawful and Unfair Acts and Practices.

## II. STANDARD OF REVIEW

"The motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Gilligan v. Jamco Develop. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). A Rule 12(b)(6) dismissal is proper only in "extraordinary" cases. *U.S. v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).

When considering a Rule 12(b)(6) motion, the court must (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether the plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-338 (9th Cir. 1996).

## III. ISSUES

**A.   Whether ASC is a Debt Collector As it Collects Debts in the Ordinary Course of Its Business Squarely Meeting the Rosenthal Act's Definition of a "Debt Collector."**

Civil Code §1788.2(c) defines a debt collector as "any person who . . . engages in debt collection." ASC does not deny that it is engaged in debt collection.

**B.  Whether Congress Intended to Preempt A State Common Law Invasion of Privacy Claim When it does not Affect the Exercise of a National Bank's Powers.**

12 C.F.R. §34.4.(b)(2) specifically permits a Plaintiff to bring tort actions.

**C.  Whether ASC'S Incessant Phone Calls Constitutes an Invasion of Privacy.**

Ms. Mayer estimates that over six months, ASC Representatives called her seventy times.

**D.  Whether Ms. Mayer States a Claim for a Telephone Consumers Protection Act Violation When She did not Consent to Debt Collection Phone Calls from ASC.**

Ms. Mayer expressly requested that Defendant contact her attorney on multiple occasions. An FCC Order expressly rejects a specific exemption for debt collection calls.

////

////

**E.  Whether ASC'S Violations of the Rosenthal and TCP Acts and Invasion of Privacy Constitute Unlawful Business Acts; California Law Prohibits Such Activity.**

Cal. Bus. & Prof. Code §17200 proscribes inter alia "any unlawful business act or practice."  Ms. Mayer alleges three separate violations of law.

## IV. STATEMENT OF FACTS

Ms. Mayer took out a loan to purchase her home in June of 2005. Complaint at ¶¶12, 14.  Defendant ASC, the loan's servicer, collects payments on the loan.  From September 2008 to March 2009, ASC representatives harassed Ms. Mayer with continual phone calls to her home and cell phones to collect payments on the loan. *Id*. at ¶31, Mayer Declaration at 2.  Ms. Mayer informed ASC callers that she had legal counsel and provided the name and phone number of her attorney.  Complaint at ¶32.  Nevertheless, ASC representatives continued to contact and harass Ms. Mayer. *Id*., Mayer Declaration at ¶¶5-7.

ASC called her cell phone using an automatic telephone dialing system including an automated dialing machine, dialer, and auto-dialer.  Ms. Mayer is forced to pay for calls to her cell phone. If Ms. Mayer did not answer the cell phone, ASC would leave a prerecorded message demanding that she call back. Complaint at ¶¶33-37.

## V. ARGUMENT

**A.  ASC is a Debt Collector As it Collects Debts in the Ordinary Course of Its Business Squarely Meeting the Rosenthal Act's Definition of a "Debt Collector."**

ASC correctly states that Cal. Civ. Code §1788.17 incorporates certain provisions of the Fair Debt Collection Practices Act (FDCPA). It goes on to insist that under §1692a(6) of the FDCPA, a servicer such as ASC is not a debt collector. That is true, however it is irrelevant. Ms. Mayer is not suing ASC under the FDCPA.

"California simply incorporated by reference the text of certain federal provisions into the [Rosenthal Act], rather than copying them verbatim into the California code." *Alkan v. Citimortgage, Inc.*, 336 F.Supp.2d 1061, 1065 (2004 N.D. Cal.).  As Defendant admits,

§1788.17 incorporates only §§1692b through 1692k of the FDCPA.  There is no reference to §1692a(6) of the FDCPA in the Rosenthal Act.

The Court discussed this specific issue in *McGrew v. Countrywide Home Loans, Inc.*, No. 08-CV-1831 DMS (S.D. Cal. May 27, 2009) at *4; it stated:

> "The Rosenthal Act regulates the collection of 'consumer debts,' *i.e.,* those incurred by natural persons to acquire property, services, or money for personal, family, or household use. Cal. Civ.Code § 1788.2(b), (e)-(f), (h). It applies to 'any person who, in the ordinary course of business, regularly, and on behalf of himself or herself or others, engages in debt collection.' *Id.,* at § 1788.2(c). Under this definition, and unlike the federal Fair Debt Collection Practices Act (FDCPA), 'debt collector' includes creditors and mortgage servicers….

> "Furthermore, under California's nonjudicial foreclosure statute, trustees conducting a trustee sale are specifically exempt from the Rosenthal Act. *See* Cal. Civ.Code § 2924(b). From this, it is plain that the California legislature understands the Rosenthal Act may apply to foreclosure proceedings. Applying principles of statutory construction, … the omission of the lenders and servicers from Cal. Civ.Code § 2924(b) means that such actors may be held liable for any unlawful debt collection activities during foreclosure."

Ms. Mayer properly alleged ASC'S status as a debt collector and its harassing behavior.  <u>Complaint</u> at ¶¶7-11, 31-37, and 44-48; <u>Mayer Declaration</u> at ¶¶2-7.  ASC meets the definition of a "debt collector" under the plain meaning of the Rosenthal Act: ASC collects debts in the ordinary course of its business.  In doing so, ASC continually called Ms. Mayer's home and cell phones to collect payments from September 2008 to March 2009.  *Id.* at ¶31, <u>Mayer Declaration</u> at ¶2.

ASC'S engaging in harassing activity during foreclosure proceedings does not change the unlawful nature of such acts.  Moreover, ASC'S persistent phone calls were not in furtherance of the foreclosure of Ms. Mayer's home.  ASC need only have followed the procedures set forth in Cal. Civ. Code §§2924 *et seq*.

Therefore, ASC is liable for violating the Rosenthal Act.

**B.  Congress did Not Intend to Preempt A State Common Law Invasion of Privacy Claim; Such Claims do not Affect the Exercise of a National Bank's Powers.**

ASC failed to review 12 C.F.R. §34.4.(b)(2):

> "(b) State laws on the following subjects are not inconsistent with the real estate lending powers of national banks and apply to national banks to the extent that they only incidentally affect the exercise of national banks' real estate lending powers:…(2) Torts…."

ASC'S preemption argument is wholly without merit.

**C.  ASC'S Pattern of Incessant Phone Calls Constitutes an Invasion of Privacy.**

"One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Miller v. National Broadcasting Co.*, 187 Cal.App.3d 1463, 1482 (1986), quoting *Restatement (Second) of Torts* §652B (1977).

The volume and frequency of phone calls made to collect a debt creates "a genuine issue of fact as to whether [a] Plaintiff's privacy was invaded." *Joseph v. J.J. Mac Intyre Companies, L.L.C.,* 238 F. Supp. 2d 1158, 1169 (2002).  Plaintiff Ruby Joseph filed suit alleging that the defendant called plaintiff at odd hours and multiple times a day for over a year and a half.  The defendant admittedly made 200 calls in span of nineteen months.  The court denied the defendant's motion for summary judgment holding an invasion of privacy claim is actionable with facts showing an excessive number of calls.

ASC continually contacted Ms. Mayer's home and cell phones to collect payments from September 2008 to March 2009.  Ms. Mayer did not consent to this excessive number of phone calls.  Ms. Mayer requested several times that ASC contact her attorney regarding this debt. Complaint at ¶¶31-32, Mayer Declaration at ¶¶2-7.

A consumer cannot waive an expectation of privacy in her own home by simply providing her contact information.  This further cannot be construed as impliedly consenting

to unlawful harassment.  As in *Joseph*, there is a genuine issue of fact as to whether Ms. Mayer's privacy was invaded.  Ms. Mayer pleads sufficient facts stating a claim for an invasion of privacy.

### D.  Ms. Mayer States a Claim for a TCPA Violation As She did not Consent to Debt Collection Phone Calls from ASC.

The TCPA prohibits the making of "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice…to any telephone number assigned to a …cellular telephone service…or any service for which the called party is charged for the call." 47 U.S.C. §227(1)(A)(iii) (West 1999).

ASC'S assertion that Ms. Mayer gave ASC "prior express consent" is flawed.  First, Ms. Mayer did not expressly consent to the phone calls from ASC.  Second, the FCC's Order cited to by ASC expressly rejected a specific exemption for debt collection calls.

The "burden [is] on the creditor to show it obtained the necessary prior express consent" to make autodialed and prerecorded calls.  *FCC Declaratory Ruling*, FCC 07-232, at ¶10 (Dec. 28, 2007).  Releasing phone numbers will be deemed having given consent "absent instructions to the contrary." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, 8753 (1992).

ASC was assigned the rights to service and collect the loan; ASC played no role in the origination of the loan.  Ms. Mayer took out the loan through BNC Mortgage. <u>Complaint</u> at ¶14.  ASC cannot show consent based on any disclosures to the original lender.

Moreover, Ms. Mayer expressly requested ASC contact her attorney on multiple occasions.  ASC however continued contacting Ms. Mayer directly.  *Id*. at ¶32, <u>Mayer Declaration</u> at ¶¶5-7.  The complaint shows Ms. Mayer did not consent to the six-month span of phone calls.  Providing a lender contact information for legitimate purposes cannot be construed as impliedly consenting to unlawful debt collection practices.  ASC does not meet its burden of showing Ms. Mayer consented to a barrage of pre-recorded messages.

In addition, the FCC deemed a debt collection exemption "unnecessary as those calls are covered by exemptions for commercial calls: (1) involving an existing business relationship; or (2) which do not affect privacy rights and which do not transmit unsolicited advertisements." *McGrew*, No. 08-CV-1831 DMS at *3 quoting *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, 8773 (1992).

Here, ASC and Ms. Mayer did not have an existing business relationship. There was a debt collector/debtor relationship at best.  Furthermore, ASC'S relentless phone campaign, including the auto-dialer, infringed on Ms. Mayer's privacy. Complaint at ¶¶31-36, 50-54.  ASC may thus be held liable for its violations of the TCPA.

**E.  ASC'S Violations of the Rosenthal and TCP Acts and Invasion of Privacy Constitute Unlawful Business Acts When California Law Prohibits Such Activity.**

Cal. Bus. & Prof. Code §17200 proscribes "any unlawful, unfair or fraudulent business act of practice[.]"  Any such act serves the basis for a claim of unfair competition. *Cal-Tech Comm'n's, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 180 (1999); *In re Pomona Valley Med. Group*, 476 F.3d 665, 674 (9th Cir. 2007).

Because Ms. Mayer properly pled violations of the Rosenthal and TCP Acts and an invasion of her privacy, a §17200 claim is thus appropriate.

**VI. CONCLUSION**

Defendant ASC violated the Rosenthal Act, the TCPA, and invaded Ms. Mayer's privacy.  The unremitting phone calls over a six-month span to collect on a debt had nothing to do with the foreclosure process.  These violations are unlawful business acts.  Ms. Mayer respectfully requests the Court deny ASC'S Motion to Dismiss in its entirety.

Date: August 27, 2009                   /s/ Octavio Cardona-Loya II          .
                                        Octavio Cardona-Loya II,
                                        Attorney for Plaintiff